IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM KLOVACH,

            Petitioner,                 No. CIV S-05-1904 FCD EFB P

     vs.

D. G. ADAMS,

            Respondent.           <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

       Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a 2003 judgment of conviction entered against him in Sacramento County Superior Court on a charge of residential burglary. He alleges that: (1) the trial court violated his right to due process when it failed to give a jury instruction on a lesser related offense; and (2) the trial court violated his right to due process when it failed to strike one or more of his prior convictions at the sentencing proceedings.  Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

////

////

////

1

**I.      Procedural and Factual Background**

      In its unpublished memorandum opinion affirming petitioner's judgment of conviction on appeal[1], the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant William Paul Klovach was convicted after a jury trial of residential burglary.  (Pen.Code, § 459.)[2]  The trial court found true one prior serious felony conviction for purposes of enhancement (§ 667, subd. (a)) and two prior serious felony convictions under the "three strikes" law (§§ 667, subd. (b)-(I), 1170.12).  Defendant asked the trial court to dismiss his strikes to avoid an unjust sentence.  The court denied the request and sentenced defendant to an aggregate term of 30 years to life.  On appeal, defendant claims: (1) the trial court erred in denying his request for a jury instruction on the lesser related offense of trespass, (2) the trial court abused its discretion in declining to dismiss his prior strikes, and (3) the trial court erred in limiting his presentence credits to 20 percent. We agree with only the last contention and modify the judgment accordingly.

> **BACKGROUND**

> On October 25, 2001, defendant asked a neighbor, Sean Tipple, for a ride to a pawnshop.  Tipple, who was with his girlfriend, Tanya Fanton, agreed to give defendant a ride.  Originally, defendant had nothing in his possession, but after Tipple agreed to take him, defendant went into his residence, got a dark-colored duffel bag, and put it in the trunk of Tipple's car.[3]

> Once inside Tipple's car, defendant directed Tipple to a nearby house on Conklin Court.  Tipple parked in front of the house.  Defendant said he needed to speak with a friend there and walked up to the house while Tipple and Fanton waited in the car.

> About one minute later, Marlon Walker arrived home to find Tipple's car parked in front of his house.  When Walker asked Tipple if he needed any help, Tipple told Walker that "Willie" was at his door waiting to talk to him.  Walker asked, "Willie who[?]" and Tipple replied, "Willie from the next court over."

---

[1]  Notice of Lodging of Documents on January 9, 2006 (Doc. No. 12), Resp.'s Lodg. Doc. No. 2 (hereinafter "Opinion").

[2]  All further statutory references are to the Penal Code.

[3]  Defendant and his mother were living at defendant's grandmother's residence at the time of the burglary.

Walker went to his front door, looked through the window, and saw defendant inside.  Defendant was using a rag to wipe down the threshold and doorknob of the back door.  Walker confronted defendant, whom he had never seen before, and asked what he was doing in his home.  Defendant responded by running and jumping over the fence.

After defendant fled, Walker looked around his house and found the place had been "trashed."  A window in the dining area of the house had been broken and he was missing several items, including a satellite receiver and satellite "smart" card, his compact disk collection consisting of 111 disks, a radio, and a sword he received from the military upon retirement.  Walker immediately called the police.

Tipple saw the confrontation between Walker and defendant, so he went home and told his father what had happened.  Shortly after Tipple arrived home, defendant reappeared.  Defendant seemed normal, as if nothing had happened.  Defendant still wanted to go to the pawnshop, and although Tipple was suspicious of him, he drove defendant there anyway.

On the way to the pawnshop, defendant was "really hyper," "jittery," and "constantly wiping his nose," which was "running a lot."  Defendant might have been under the influence of drugs although he was able to walk and carry on conversation normally.  Once at the pawnshop, defendant retrieved his bag from Tipple's trunk and went inside.  Tipple did not see what was in the bag and did not go into the pawnshop with defendant.

Defendant came into the shop with a black duffle bag full of compact disks.  The pawnshop employee recognized defendant from previous transactions.  Defendant told the pawnshop employee that he needed to sell the disks, and the clerk paid him $80 for approximately 100 disks.

When defendant left the pawnshop, he paid Tipple $15 for gasoline and asked Tipple to drop him off across the street at Carrow's Restaurant.  Tipple did so and then drove back to Walker's house to find out what had happened earlier.  When he found out, he spoke with police and told them where defendant lived.

On that same day, defendant's mother had seen defendant with a black bag, compact disks, a green bag with a karaoke machine, a box-shaped object that appeared to be electronic equipment, and a sword.  Defendant put some of the objects in the garage but placed the sword under his bed.  He had also asked his mother to call a pawnshop to determine how much money he could get for the compact disks.

////

3

1

2

3

4

5

6

Also on October 25, 2001, defendant had gone to a clinic to obtain medication called Fiorinal. He took Fiorinal on a daily basis to relieve headaches he suffered as a result of a bicycle accident in December 2000. Defendant also heard voices. After getting the medication, he went home and took a nap. He acted normal during most of the day and was able to carry on a conversation. However, when defendant found out the police were on their way, he began acting abnormally and hid some of the property near a shed in a field. It was also at this point that his mother noticed pills from defendant's medicine bottle were missing. She believed he had taken 30 to 34 Fiorinal pills.

7

8

9

10

11

12

When the police arrived at defendant's residence, defendant's mother told them the sword was under defendant's bed. The officers also recovered several other items taken from Walker's home, including a compact disk player, a karaoke machine, workout gloves, remote controls, headphones, and a satellite card. Although Sheriff's Deputy John Foster did not believe defendant had overdosed on medication, he took defendant to the hospital as a precautionary measure. Defendant was calm and cooperative, had no trouble walking or talking, and did not appear to be under the influence of any narcotic.

13

14

15

16

Defendant's grandmother testified that on October 24, 2001, defendant obtained three containers of prescription medication. Defendant had been hit by a car while riding his bicycle on December 19, 2000. He had brain surgery as a result of the accident and "was never the same." He even got lost on several occasions after the operation although he was born and raised in Sacramento.

17

18

19

20

21

On the morning of October 25, 2001, defendant's grandmother noticed that about 10 pills were missing, and she told defendant not to take any more medication. That evening, she noticed more pills missing from one of the containers. Shortly thereafter, the Tipples came over and told her defendant had "done a robbery." When defendant came home, she told him he had "done something bad." He looked "mummified," said he did not do anything, got into bed, and covered himself with a blanket. She told him the police were coming but he "just laid there."

22

23

24

Defendant told his mother that on the day of the burglary, he had been having blackouts. Defendant was adjudged incompetent to stand trial and committed to Atascadero State Hospital on July 9, 2002. He was certified competent on October 18, 2002, and found competent by the court on February 18, 2003.

25

26

Petitioner filed a timely appeal of his conviction in the California Court of Appeal for the

Third Appellate District. On July 22, 2004, the appellate court modified the judgment to award

4

petitioner additional presentence custody credits, and otherwise affirmed petitioner's judgment

of conviction.  Lodg. Doc. No. 2.

On August 2, 2004, petitioner filed a petition for review in the California Supreme Court.

Lodg. Doc. No. 3.  That petition was summarily denied by order dated September 22, 2004.

Lodg. Doc. No. 4.

**II.     Analysis**

**A.  Standards for a Writ of Habeas Corpus**

Federal habeas corpus relief is not available for any claim decided on the merits in state

court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established

United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law

set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially

indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different

result.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406

(2000)).

Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas

court may grant the writ if the state court identifies the correct governing legal principle from the

Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

case.  *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because

that court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application must also be

1    unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not

2    enough that a federal habeas court, in its independent review of the legal question, is left with a

3    'firm conviction' that the state court was 'erroneous.'")

4           The court looks to the last reasoned state court decision as the basis for the state court

5    judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court reaches a

6    decision on the merits but provides no reasoning to support its conclusion, a federal

7    habeas court independently reviews the record to determine whether habeas corpus relief is

8    available under section 2254(d).  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

9           **B. Petitioner's Claims**

10                  1.  **Failure to Instruct on Lesser Offense**

11          Petitioner's first claim is that the trial court violated his right to due process when it

12   denied his request for a jury instruction on the "lesser related" offense of trespass.  Pet. at 5.

13   Petitioner notes that his trial counsel was allowed to argue during his closing argument that

14   petitioner merely committed a trespass, but that he was not allowed to present a jury instruction

15   on trespass. *Id.*  Petitioner argues that this "makes no sense." *Id.*  In his petition for review filed

16   in the California Supreme Court, petitioner argued that the trial court's refusal to instruct on

17   trespass deprived him of the opportunity to present a "partial defense" to the burglary charge.

18   Lodg. Doc. No. 3 at 3.

19                  a.  **State Court Opinion**

20          The California Court of Appeal rejected petitioner's arguments in this regard, reasoning

21   as follows:

22                 At trial, defendant requested an instruction and verdict form on the
                   lesser related offense of trespass.  The prosecution opposed the
23                 request and the trial court denied it based on *People v. Birks*
                   (1998) 19 Cal.4th 108 (*Birks*).  Defendant contends he was denied
24                 a fair trial by the trial court's refusal to instruct the jury on trespass
                   because the instruction set forth the defense theory, i.e., that Tipple
25                 and Fanton were the burglars and defendant did no more than
                   trespass.  We find no error.

26

                                                      6

The California Supreme Court in Birks held that the trial court may not instruct the jury on a lesser related offense unless the prosecutor agrees to the instruction. (*Birks, supra*, 19 Cal.4th at pp. 112-113.)  To permit otherwise would give "the defendant a superior trial right to seek and obtain conviction for a lesser uncharged offense whose elements the prosecution has neither pled nor sought to prove." (*Ibid.*)  As trespass is a lesser related, rather than a necessarily included, offense to the charged burglary, the trial court properly refused to give the requested instruction in light of the prosecution's objection. (*Id.* at pp. 112-113 & 118, fn. 8.)

Defendant acknowledges this holding but asserts that the failure to instruct on the lesser related offense deprived him of the ability to present a defense, namely that although he may have trespassed on Walker's property, he had serious mental problems, may have been on drugs, and did not have the requisite intent, and that Tipple and Fanton were actually the burglars.  Defendant's claim lacks merit.

First, to the extent that this claim seeks to circumvent *Birks*, it cannot succeed.  As one court noted in rejecting an identical contention, *Birks* determined that it is inappropriate to permit trial courts to modify the charging process by instructing on a related, but uncharged, offense (*People v. Martinez* (2002) 95 Cal.App.4th 581, 586), and we are bound by that decision (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455-456).

Second, defendant fails to support his federal constitutional claim with citations to authority.  Defendant's position is not novel.  In most cases involving lesser related offenses, the defendant seeks to utilize the lesser offense to demonstrate his lack of intent for the greater, charged offense. (*See, e.g., Birks, supra*, 19 Cal.4th at pp. 114-115.)  Yet defendant has not cited a single case that would suggest the failure to instruct on a lesser related offense raises constitutional concerns by preventing the presentation of a defense.  Instead, he cites wholly inapplicable authority saying state evidence laws must bow to defendant's right to present evidence on his theory of defense.  In fact, the United States Supreme Court has suggested defendant's position is wrong.  In *Hopkins v. Reeves* (1998) 524 U.S. 88 [141 L.Ed.2d 76] (*Hopkins*), the court found an instruction on a lesser related offense to be inappropriate, noting: "Almost all States ... provide instructions only on those offenses that have been deemed to constitute lesser included offenses of the charged crime. [Citation.] We have never suggested that the Constitution requires anything more." (*Id.* at pp. 96-97.)

Third, defendant cannot demonstrate that he was deprived of a defense in this case.  The fact that defendant may have committed a different offense, and in his view should have been charged differently, did not affect his ability to mount a defense.  In argument to the jury, he read the trespass instruction to the jury and used it as a means to illustrate the intent required for the

7

> charged offenses, argued that he did not possess that intent, and
> argued that he only committed the trespass.  The jury's verdict,
> however, demonstrates that the jury did not believe his claim that
> he lacked the specific intent to steal Walker's property.[4]  Had the
> jury accepted his claim, it would have acquitted him of the charged
> offense.  Instead, it convicted him.  The fact that the jury was not
> persuaded does not mean that defendant was precluded from
> presenting his defense.

Opinion at 6-9.

### b. **Analysis**

A state court's determination that a requested jury instruction is not allowed under state

law cannot form the basis for federal habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 71-72

(1991).  *See also Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005).  Accordingly, the

decision of the California Court of Appeal that petitioner had no right under state law to a jury

instruction on a lesser related offense is binding on this court.  *See Waddington v. Sarausad*, ___

U.S. ___, 129 S.Ct. 823, 832 n.5 (2009) ("we have repeatedly held that 'it is not the province of

a federal habeas court to reexamine state-court determinations on state-law questions'");

*Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) "a state court's interpretation of state law . . . binds

a federal court sitting in federal habeas").

Nor does petitioner have a federal constitutional right to an instruction on a lesser related

offense.  In *Hopkins v. Reeves*, 524 U.S. 88, 96 (1998), the United States Supreme Court held

that state trial courts, in capital cases, are not constitutionally required to instruct juries on

offenses that are not lesser-included offenses of the charged crime, as defined by state law.  The

court explained:

> Almost all States . . . provide instructions only on those offenses
> that have been deemed to constitute lesser included offenses of the
> charged crime.  (footnote omitted.)  We have never suggested that
> the Constitution requires anything more.  The Court of Appeals in

---

[4]  In this case, the jury was instructed that in order to find burglary, it had to find that
"[a]t the time of the entry [defendant] had the specific intent to steal and take away someone
else's property and intended to deprive the owner permanently of that property."

8

1   this case, however, required in effect that States create lesser
2   included offenses to all capital crimes, by requiring that an
    instruction be given on some other offense – what could be called
3   a "lesser related offense" – when no lesser included offense exists.
    Such a requirement is not only unprecedented, but also
4   unworkable.

5   *Id.* at 96-97.  The court declined to hold that a state criminal defendant has a federal

6   constitutional right to "an instruction on any offense that bears a resemblance to the charged

7   crime and is supported by the evidence."  *Id.* at 97.  As noted by the California Court of Appeal,

8   petitioner has cited no authority for the proposition that a state criminal defendant has a federal

9   constitutional right to a jury instruction on a lesser related offense, or that "a failure to instruct

10  on a lesser related offense raises constitutional concerns by preventing the presentation of a

11  defense."  Opinion at 7-8.  Accordingly, the state court's rejection of petitioner's claim was not

12  contrary to, or an unreasonable application of clearly established federal law.  *See Brewer v.*

13  *Hall*, 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly

14  established federal law relating to the legal issue the habeas petitioner raised in state court, the

15  state court's decision cannot be contrary to or an unreasonable application of clearly established

16  federal law"); *Meza v. Campbell*, No. CV 06-6441 SJO (AJW), 2009 WL 2059734 (C.D. Cal.

17  July 10, 2009) (rejecting an argument that the trial court violated petitioner's federal

18  constitutional rights by failing to instruct the jury on a lesser related offense).[5]

19

20       [5] The United States Supreme Court has held that the failure to instruct on a lesser
21  *included* offense in a capital case is constitutional error if there was evidence to support the
    instruction.  *Beck v. Alabama*, 447 U.S. 625, 638 (1980).  The Supreme Court has not decided
22  whether this rationale also extends to non-capital cases, and the Ninth Circuit, like several other
    federal circuits, has declined to extend *Beck* to find constitutional error arising from the failure to
23  instruct on a lesser included offense in a non-capital case.  *See Solis v. Garcia*, 219 F.3d 922,
    929 (9th Cir. 2000); *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984); *James v. Reese*, 546
24  F.2d 325, 327 (9th Cir. 1976) ("Failure of a state court to instruct on a lesser offense fails to
    present a federal constitutional question and will not be considered in a federal habeas corpus
25  proceeding").  As explained by the California Court of Appeal, trespass is not a lesser *included*
    offense to burglary.  Even if it were, the trial court's failure to give a lesser included offense
26  instruction would not merit federal habeas corpus relief.  *See Windham v. Merkle*, 163 F.3d
    1092, 1106 (9th Cir. 1998) ("[T]he failure of a state trial court to instruct on lesser included

1    Petitioner argues, however, that the trial court's failure to give a jury instruction on

2  trespass violated his clearly established right to present a defense.  Of course, criminal

3  defendants have a constitutional right, implicit in the Sixth Amendment, to present a defense;

4  this right is "a fundamental element of due process of law."  *Washington v. Texas*, 388 U.S. 14,

5  19 (1967).  *See also California v. Trombetta*, 467 U.S. 479, 485 (1984).  The Supreme Court has

6  also held that "[a]s a general proposition, a defendant is entitled to an instruction as to any

7  recognized defense for which there exists evidence sufficient for a reasonable jury to find in his

8  favor."  *Mathews v. United States*, 485 U.S. 58, 63 (1988) (citation omitted).  The Ninth Circuit

9  has applied this standard to habeas petitions arising from state convictions.  *See Conde v. Henry*,

10  198 F.3d 734, 739 (9th Cir. 1999) ("It is well established that a criminal defendant is entitled to

11  adequate instructions on the defense theory of the case.").

12    Nevertheless, because the failure to instruct is a trial error, petitioner is entitled to relief

13  only if he can show prejudice.  *California v. Roy*, 519 U.S. 2, 5 (1996) (explaining

14  harmless-error analysis).  Prejudice is shown for purposes of habeas relief if the trial error had a

15  "substantial and injurious effect or influence in determining the jury's verdict."  *Id.* at 6 (quoting

16  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  Where, as here, the challenge is a failure to

17  give an instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an

18  incomplete instruction is less likely to be prejudicial than a misstatement of the law."  *Henderson*

19  *v. Kibbe*, 431 U.S. 145, 155 (1977).

20    Assuming *arguendo* that the trial court erred in failing to instruct the jury on trespass, any

21  error was harmless.  As explained by the state appellate court, the absence of a jury instruction

22  on trespass did not prevent petitioner's trial counsel from presenting this defense theory to the

23  jury.  Petitioner's counsel read the instruction on trespass to the jury during his closing argument

24

25  offenses in a non-capital case does not present a federal constitutional question."); *Teague v. Lane*, 489 U.S. 28 (1989); *Solis*, 219 F.3d at 929 (habeas relief for failure to instruct on lesser included offense in non-capital case barred by *Teague* because it would require the application of

26  a new constitutional rule).

and argued that it was a "distinct possibility" and "more likely than not" that petitioner did not
harbor the intent to steal at the time he entered Mr. Walker's house, but had merely committed a
trespass at the direction of Tipple and Fanton.  Reporter's Transcript on Appeal (RT) at 243-44,
245.  Counsel also read the jury instruction that defines "receiving stolen property" and argued
that "at worst what we may have here is what is known as receiving stolen property." *Id.* at 244-
45.  Although the jury rejected petitioner's version of the events, his counsel was not prevented
from presenting it to the jury.

Nor was the jury precluded from acquitting petitioner of the charged offense because they
did not receive an instruction on trespass.  The jury could have acquitted petitioner if they
believed his theory, as articulated during counsel's closing argument, that he lacked intent
because of mental illness and drug use and may have been simply following orders from Tipple
and Fanton.  By convicting petitioner, the jury simply rejected this argument.  The court also
notes that petitioner has pointed to no evidence in the record to support his trespass theory.
Under these circumstances, petitioner has failed to demonstrate prejudice resulting from the trial
court's failure to instruct the jury on trespass.

For all of the reasons described above, petitioner is not entitled to relief on this claim.

## 2. Failure to Strike Priors

Petitioner's next claim is the trial court abused its discretion under state law when it
denied his motion to strike one or more of his prior convictions at sentencing.  Pet. at 5.  He
argues that the trial court "failed to recognize that petitioner has a history of serious mental
illness" and that his mental condition "significantly reduced his ability to reason and therefore
reduced his culpability for any crime." *Id.*  Before the California Supreme Court, petitioner
argued that the trial judge erroneously believed "it could not use mental illness as a reason to
reduce the sentence."  Lodg. Doc. No. 3, at 4.

////

////

## a.  <u>State Court Opinion</u>

The California Court of Appeal rejected these arguments, reasoning as follows:

> Defendant challenges the trial court's ruling declining to strike one or more of his strike priors, contending the court misunderstood its discretion to strike under the circumstances in this case. Accordingly, he claims the matter must be remanded for resentencing to allow the trial court to exercise an "informed" decision.  We find no indication the trial court misunderstood the extent of its discretion.
>
> A trial court has discretion under section 1385, subdivisions (a) and (c) to dismiss (or strike) a prior prison term enhancement under section 667.5 if it determines that to do so would be in the furtherance of justice.  (*People v. Bradley* (1998) 64 Cal.App.4th 386, 390.)  Dismissal of a strike is a departure from the sentencing norm.  (*See People v. Gillispie* (1997) 60 Cal.App .4th 429, 434.) To justify reversal on appeal, generally an "error must affirmatively appear on the record."  (*Ibid.*; accord, *People v. Myers* (1999) 69 Cal.App.4th 305, 310.)
>
> Many factors are pertinent to the court's decision to dismiss a prior strike, but the ultimate question is whether defendant falls outside the spirit of the three strikes law.  (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)  "[T]he court ... must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*Ibid.*)
>
> At the conclusion of counsels' arguments, the trial court made the following ruling:  "All right. Well, I'm compelled to deny the motion to strike, and it's because if I granted the motion to strike it would be an abuse of my discretion.
>
> "I don't particularly agree with the Three Strike[s] law in a lot of its application, and I don't even necessarily agree that in its application in this case what would be 30 years to life is an appropriate sentence, but the law says otherwise.  Just because I disagree with the severity of the sentence is not a basis for me to grant a motion to strike a prior in this case.
>
> "I don't find it to be cruel and unusual punishment under the U.S. or California Constitutions.  It just seems to me to be somewhat excessive.

////

12

"But I agree with the prosecution in a lot of their arguments that a lot of the facts of this case belie the claims of the defendant's mental status at the time.  He conducted himself as if he knew perfectly well what he was doing.

"On the other hand, there's plenty of evidence to support that he has a legitimate mental health problem.  And his grandmother's concern about his placement in the Department of Corrections is a legitimate concern.  I would hope and think that the Department of Corrections is going to address that.  But that should not be a basis for me to grant the motion to strike a prior.

"When you consider the cases on the issue of what is or is not an abuse of discretion and reasoning for striking priors, I just don't have any of that here despite the evidence concerning some of the defendant's mental health issues."

In defendant's view, the court's statement shows that it misunderstood its discretion.  Defendant contends the court's comments indicate that it believed if it considered defendant's "serious mental problems" sufficient to take him outside the spirit of the three strikes law, its decision would be reversed for abuse of discretion.  We disagree.

The trial court's remarks reflect that it understood its discretion and its limits.  Having considered the relevant law in the matter, the court indicated that although it did not agree with the severity of the three strikes law in many cases, including, perhaps, the instant case, its disagreement with the law was not a basis for departure from the sentencing scheme.  The trial court was correct. A court acts improperly in dismissing strikes if it is "'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while ignoring 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.'"  (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 531.)

In fact, the trial court's comments are analogous to those of the court in *People v. Zichwic* (2001) 94 Cal.App.4th 944 (*Zichwic*), a case from the Sixth Appellate District.  In *Zichwic*, the trial court indicated that it wanted to give the defendant a lesser sentence but did not believe it had the legal authority to dismiss sufficient strikes and impose a "'reasonable'" sentence.  (*Id.* at p. 959.) When defense counsel asked the court to clarify whether it felt it did not have the power to dismiss any strikes, the court said it did not believe it did after applying *Williams, supra,* 17 Cal.4th 148 and considering the relevant factors.  (*Zichwic, supra,* 94 Cal.App.4th at p. 959.)  When the prosecutor asked if the court found the case fell within the spirit of the three strikes law, the court commented, "'I think it does.  I don't know if I agree with it but I am going to do it.'"  (*Ibid.*)

13

The Sixth Appellate District rejected the defendant's argument that the trial court misunderstood its discretion, noting that the court had indicated its familiarity with the controlling law and considered the relevant factors but "recognized that it could not strike a strike based on a personal feeling that the Three Strikes law is harsh." (*Zichwic, supra*, 94 Cal.App.4th at p. 960.)  The appellate court explained, "Our review of the trial judge's remarks reflects that he was aware of his limited discretion to strike strikes. The court did not neglect its own findings, as defendant asserts. Instead, after considering 'the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects,' the court could find no reason for concluding that defendant fell outside the spirit of the Three Strikes statute." (*Id.* at pp. 960-961.)

The same could be said of the instant case.  As in *Zichwic*, the trial court recognized it could not dismiss a strike based on a personal feeling that the three strikes law is harsh.  It found that although defendant had a mental health problem, "the facts of this case belie the claims of the defendant's mental status at the time" and that he "conducted himself as if he knew perfectly well what he was doing."  After considering "the cases on the issue of what is or is not an abuse of discretion and reasoning for striking priors," the court concluded it "just [did not] have any of that here despite the evidence concerning some of the defendant's mental health issues."  Thus, the court's comments relayed that although defendant had a mental health problem, it was not one that brought him outside the spirit of the three strikes law, considering the appropriate factors and reasons to strike priors.

Opinion at 9-13.

### b. **Analysis**

This claim essentially involves an interpretation of state sentencing law.  As explained above, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle*, 502 U.S. at 67.  So long as a state sentence "is not based on any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of state concern." *Makal v. State of Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976).  Thus, "[a]bsent a showing of

////

////

14

1   fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify

2   federal habeas relief." *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994).

3          The trial court's decision not to strike one or more of petitioner's prior convictions was

4   not fundamentally unfair.[6]  Petitioner has a lengthy criminal history, both as a juvenile and as an

5   adult.  Clerk's Transcript on Appeal at 274-75.  His record includes numerous burglaries and

6   arson.  *Id.*  The sentencing judge considered but rejected petitioner's argument that his mental

7   state at the time of the crime justified striking one of his prior convictions.  RT at 287-88.  He

8   concluded that petitioner's actions revealed that he "knew perfectly well what he was doing."

9   *Id.* at 288.  The state appellate court's conclusion that the sentencing judge understood his

10  discretion to strike petitioner's prior convictions but declined to do so after reviewing all of the

11  pertinent information is not based on an unreasonable determination of the facts of this case.

12  After a careful review of the sentencing proceedings, the undersigned finds no federal

13  constitutional violation in the state trial judge's exercise of his sentencing discretion.[7]  The

14  decision of the California Court of Appeal with respect to the application of state sentencing law

15  is not contrary to or an unreasonable application of federal law and does not justify federal

16  habeas relief.  Accordingly, petitioner is not entitled to relief on this claim.

17  ////

18  ////

19

20         [6]  California Penal Code § 1385 provides, in relevant part, "[t]he judge or magistrate may,
    either of his or her own motion or upon the application of the prosecuting attorney, and in
21  furtherance of justice, order an action to be dismissed."  The California Supreme Court has held
    that in cases charged under California's Three Strikes law, a court may exercise the power to
22  dismiss prior convictions at the time of sentencing in the furtherance of justice.  *People v.
    Superior Court (Romero)*, 13 Cal. 4th 497, 529-30 (1996).

23
           [7]  If petitioner's sentence had been imposed under an invalid statute and/or was in excess
24  of that actually permitted under state law, a federal due process violation would be presented.
    *See Marzano v. Kincheloe*, 915 F.2d 549, 552 (9th Cir. 1990) (due process violation found where
25  petitioner's sentence of life imprisonment without the possibility of parole could not be
    constitutionally imposed under the state statute upon which his conviction was based).
26  However, petitioner has not made a showing that such is the case here.

**III.  Conclusion**

> For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

> These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  September 8, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE